

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 6981 | DATE | 6/9/2000 |
| CASE TITLE | 3COM Corp. Vs. Electronic Recovery etc. et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted in part and denied in part. Status hearing set for July 13, 2000 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | JUN 12 2000 date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | JUN 12 2000 date mailed notice |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 27

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3COM CORPORATION,                          )
                                           )
                Plaintiff,                 )
                                           )
        vs.                                )   No. 99 C 6981
                                           )
ELECTRONIC RECOVERY SPECIALISTS,           )
INC., DAVIS GILBERT and LEONARD            )
CALDWELL,                                  )
                                           )
                Defendants.                )

                                                      DOCKETED

MEMORANDUM OPINION AND ORDER                          JUN 1 2 2000

Plaintiff 3Com Corporation, as successor to U.S. Robotics, Inc. (USR), brings this diversity action against defendants Electronic Recovery Specialists, Inc. (ERS), Davis Gilbert (Gilbert) and Leonard Caldwell (Caldwell), alleging various violations of contract, tort, and state statutory law. ERS and Gilbert[1] have moved to dismiss all but one of plaintiff's claims and to curtail plaintiff's ability to recover punitive damages and prejudgment interest. For the reasons set forth below, defendants' motion is granted in part and denied in part.

BACKGROUND

Between May 1995 and April 1997, USR and ERS were engaged in a contractual agreement regarding the sale of electronic and metal scrap generated in the course of USR's business.[2] Under the terms of the agreement ERS would pick up the scrap from one of USR's facilities, sell the scrap to third party customers, and then pay USR 70% of the scrap's resale

---

[1] Caldwell has answered the complaint and does not join in the motion to dismiss filed by ERS and Gilbert, who we will refer to herein as "defendants," unless otherwise indicated.

[2] On a motion to dismiss, we take as true all facts alleged in the complaint and construe all reasonable inferences in plaintiff's favor. See Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992).

value. ERS would weigh the scrap after removing it from USR's facilities, and USR relied on ERS to accurately report both the amount of scrap it took from USR and the money owed to USR under the terms of the agreement.

In the complaint, plaintiff alleges that ERS and its president, Davis Gilbert, engaged in a scheme to intentionally misrepresent the amount of scrap they took from USR. Specifically, plaintiff claims that ERS and Gilbert understated the actual weight and value of the scrap they removed from USR such that they paid substantially less for the scrap than was required under the agreement. ERS and Gilbert were able to complete this scheme with the assistance of Leonard Caldwell, who served as supervisor in charge of USR's electronic component and metal scrap disposal program in Illinois. Plaintiff alleges that from at least February through September 1996, Caldwell participated in the unlawful scheme and received approximately $80,000 in kickbacks from ERS and Gilbert in return for his complicity.

USR learned of the alleged scheme in April 1997. On July 9, 1997, Caldwell was interviewed by the local police and confessed his role in the operation. On May 26, 1999, Caldwell pled guilty to theft and was sentenced to one-year probation. Plaintiff thereafter filed this lawsuit on October 25, 1999. The first amended complaint, filed January 27, 2000, alleges breach of contract against ERS (count I), tortious interference against Gilbert (count II), breach of fiduciary duty against Caldwell (count III), and against all three defendants alleges fraud/deceit (count IV), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (count V), conversion (count VI), restitution (count VII), accounting (count VIII),

and constructive trust (count IX).³ Defendants seek to dismiss counts I, II, and IV-IX for failure to state a claim under Rule12(b). *See* Fed.R.Civ.P. 12(b)(6). Defendants also have moved to limit plaintiff's ability to recover punitive damages and prejudgment interest with respect to certain claims under Rule 12(f). *See* Fed.R.Civ.P. 12(f). We address each of defendants' arguments below.

## DISCUSSION

### I. Breach of Contract

In count I of the complaint plaintiff alleges that ERS breached its contract with USR by intentionally paying less for the scrap than was owed under the terms of the agreement. Defendants argue that this claim is time-barred, at least in part. According to defendants the contract at issue here concerns a transaction in goods and therefore is governed by Article 2 of the Uniform Commercial Code (UCC), 810 ILCS 5/2-101 *et seq.* Article 2 of the UCC contains a four-year statute of limitations provision. *See* 810 ILCS 5/2-725. Since the original complaint was filed on October 25, 1999, defendants argue that plaintiff cannot maintain an action for any acts constituting a breach of contract that took place prior to October 25, 1995.

Plaintiff responds by characterizing the agreement between USR and ERS as a contract for services and therefore outside the scope of the UCC and its four-year limitations period. Plaintiff emphasizes that the agreement required ERS to pick up and dispose of USR's scrap, making it a contract for disposal services and not for sale of goods. We are not persuaded. Under Article 2 of the UCC, the term "goods" is defined to include "all things, including

---

³The constructive trust claim is misnumbered in plaintiff's first amended complaint; for clarity's sake, we will refer to that claim as count IX.

specially manufactured goods, which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities and things in action." 810 ILCS 5/2-105 (internal citation omitted). Given this broad construction, it is not surprising that contracts regarding the sale of scrap traditionally have been defined as transactions in goods falling under Article 2 of the UCC. *See* <u>Unisys Corp. v. Electronic Recovery, Inc.</u>, 1995 WL 746241, at *3 (N.D. Ill. Dec. 7, 1995) (collecting cases).

Even if we consider the agreement between USR and ERS as a mixed contract involving both services and goods, the UCC is applicable here. When interpreting mixed contracts, courts look to the agreement's predominate purpose. *See* <u>Zayre Corp. v. S.M. & R. Co., Inc.</u>, 882 F.2d 1145, 1153 (7th Cir. 1989). If the transaction "was predominantly one for the sale of goods with services incidentally involved," then the contract is governed by the UCC. <u>Republic Steel Corp. v. Pennsylvania Engineering Corp.</u>, 785 F.2d 174, 181 (7th Cir. 1986). Here, the agreement between USR and ERS primarily concerned the sale of USR's scrap; the disposal services rendered by ERS were only incidental to this chief objective. Under the contract's payment structure compensation was based on the amount of scrap sold, not on the effort made by ERS in removing it from USR's facilities. *See* <u>Center Ice of DuPage, Inc. v. Burley's Rink Supply, Inc.</u>, 1997 WL 43230, at *4 (N.D. Ill. Jan. 24, 1997) (structure of contract relevant). Furthermore, the sale of the scrap was ERS's motivation for providing disposal services, and not *vice versa*. *See id.* The agreement between USR and ERS concerned goods first, and services second. Therefore, the UCC applies.

Applying the four-year statute of limitations provided by Article 2 of the UCC, we find that part of count I is untimely. Insofar as plaintiff alleges conduct amounting to a breach of

contract which occurred prior to October 25, 1995, those acts are time-barred. Plaintiff's breach of contract claim, however, is not limited to pre-October 25, 1995 activity, but rather is based on conduct occurring from May 1995 through April 1997. Therefore, the bulk of the allegations underlying the breach of contract claim, *i.e.*, those acts occurring from October 25, 1995 through April 1997, are unaffected by the UCC's statute of limitations and survive defendants' motion to dismiss.

## II. Tortious Interference

In count II, plaintiff alleges that Gilbert tortiously interfered with the agreement between USR and ERS by participating in the scheme of understating the scrap's weight and value. Defendants argue that this count must fail for two reasons. First, defendants assert that the agreement between USR and ERS was terminable at will and therefore no basis for a tortious interference with contractual relations cause of action exists. Instead, plaintiff must proceed with a claim of tortious interference with prospective economic advantage, which it has not pled. Second, defendants argue that Gilbert, as president of ERS, is protected by a qualified privilege irrespective of the tortious interference theory plaintiff pursues.

It is well settled under Illinois law that contracts of an indefinite duration generally are presumed to be terminable at will by either party. *See* Jespersen v. Minnesota Min. and Mfg. Co., 700 N.E.2d 1014, 1016 (Ill. 1998). Here, the contract, as described in the complaint,[4] did not contain a durational limit. The complaint does not allege that the contract was of fixed duration, but simply states that "Between May of 1995 and April of 1997, USR contracted with

---

[4] Unfortunately, a copy of the contract has not been attached to the pleadings or briefs submitted by the parties.

ERS for the disposal of its metal and electronic scrap in Illinois" (cplt., ¶ 9). In its brief, plaintiff argues that USR continued to solicit bids from other scrap resellers and that the engagement with ERS was to continue only so long as ERS provided the best value. These factual allegations do not appear in the complaint, however, and plaintiff points to nothing in the pleadings to support its assertion that the agreement was of a fixed duration. Plaintiff has not rebutted the presumption that the contract at issue here was terminable at will.

Under Illinois law a plaintiff cannot bring an action for tortious interference with contractual relations based on a contract that is terminable at will. *See* <u>Canel and Hale, Ltd. v. Tobin</u>, 710 N.E.2d 861, 871 (Ill. App. 1st Dist.), *appeal denied*, 720 N.E.2d 1090 (Ill. 1999). When a plaintiff mistakenly does so, Illinois courts will classify the claim as one of tortious interference with prospective economic advantage. *See id.* (citing <u>Larry Karchmar, Ltd. v. Nevoral</u>, 707 N.E.2d 223, 228 (Ill. App. 1st Dist. 1999)). Defendants argue that plaintiff has not alleged that cause of action in its complaint. In order to state a claim for tortious interference with prospective economic advantage plaintiff must allege that 1) it had a reasonable expectation of entering into a valid business relationship; 2) the defendant had knowledge of the plaintiff's expectancy; 3) the defendant's purposeful interference prevented plaintiff's legitimate expectation from ripening into a valid business relationship; and 4) the plaintiff was damaged as a result of the interference. <u>Dowd & Dowd, Ltd. v. Gleason</u>, 693 N.E.2d 358, 370 (Ill. 1998). Defendants focus their attack on the first element, arguing that the complaint does not allege a reasonable expectation on the part of USR.

The complaint states that USR and ERS had engaged in a contractual relationship regarding the removal and sale of scrap for at least two years (cplt., ¶¶ 5, 9). Furthermore,

plaintiff alleges that USR fulfilled its obligations under the contract (cplt., ¶ 28). Based on these allegations, plaintiff argues that it has sufficiently pled that USR had a reasonable expectation that the agreement with ERS would continue in the future. We agree. The business relationship between USR and ERS was "presumptively [to] continue in effect so long as the parties [remained] satisfied." Anderson v. Anchor Organization for Health Maintenance, 654 N.E.2d 675, 685 (Ill. App. 1st Dist. 1995). Indeed, the contractual arrangement between USR and ERS had lasted for at least two years before USR discovered the alleged scheme and terminated the relationship. *See* Speakers of Sport, Inc. v. ProServ, Inc., 1998 WL 473469, at *3-4 (N.D. Ill. Aug. 7, 1998) (holding that a reasonable expectation existed based on two-and-a-half year business relationship), *aff'd*, 178 F.3d 862 (7th Cir. 1999). Given such circumstances, USR has sufficiently alleged a valid expectancy of continuing the contractual relationship with ERS in the future. *See* Silk v. City of Chicago, 1996 WL 312074, at *44 n.51 (N.D. Ill. Jun. 7, 1996); *see also* Fishman v. Estate of Wirtz, 807 F.2d 520, 545-46 & n.20 (7th Cir. 1986).

Having held that the complaint alleges a claim of tortious interference with prospective economic advantage, we turn to the second part of defendants' assault on count II, in which defendants argue that Gilbert is immune from liability based on his status as an officer of ERS. Illinois law grants a qualified privilege to corporate officers protecting them from liability for decisions made on behalf of the company. *See* MGD, Inc. v. Dalen Trading Co., 596 N.E.2d 15, 18 (Ill. App. 1st Dist. 1992). Plaintiff can overcome the privilege by showing that Gilbert acted with malice when he tortiously interfered with the relationship between USR and ERS. *See id.* In order to plead malice, plaintiff must allege that Gilbert acted to further his own

Page 8

personal goals or to injure plaintiffs, and that Gilbert's actions were contrary to the interests of ERS. *See* George A. Fuller Co. v. Chicago College of Osteopathic Medicine, 719 F.2d 1326, 1333 (7th Cir. 1983). Plaintiff has not satisfied this pleading requirement. We agree with plaintiff that the complaint – which alleges that "Gilbert personally profited from his actions" (cplt., ¶ 35) – supports the inference that the scheme to understate the amount and value of the scrap furthered Gilbert's personal goals. However, nothing in the pleadings indicates that Gilbert's actions were contrary to the interests of ERS. Indeed, ERS presumably profited from the alleged scheme (cplt., ¶ 16). Absent allegations that Gilbert's conduct was antagonistic to the interests of ERS, plaintiff has not pled enough to overcome the corporate officer's privilege protecting Gilbert from liability for tortious interference. *See* Gorbien v. Royal Truck & Trailer Corp., 1994 WL 11666, at *4 (N.D. Ill. Jan. 5, 1994); *see also* Fuller, 719 F.2d at 1333; Lippert Marketing, Ltd. v. Kingwood Ceramics, Inc., 1998 WL 699023, at *25-26 (N.D. Ill. Oct. 5, 1998). Count II is dismissed without prejudice.[5]

### III. Common Law Fraud

In count IV, plaintiff accuses defendants of fraud and deceit. Defendants argue that this claim has not been pled with particularity, as required by Rule 9(b), and therefore must fail. *See* Fed.R.Civ.P. 9(b) (requiring that "the circumstances constituting fraud ... shall be stated with particularity"). The Seventh Circuit has held that in order to satisfy Rule 9(b), plaintiff "must plead the 'who, what, when, and where' of the alleged fraud." Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992). Plaintiff has done so. The complaint

---

[5] Plaintiff may be able to state a claim under this count if it can allege that Gilbert misappropriated ERS's profits for his own use or otherwise show that he was the sole beneficiary of the scheme. *See* Fuller, 719 F.2d at 1333; Gorbien, 1994 WL 11666, at *4.

identifies who engaged in the allegedly fraudulent behavior (ERS, Gilbert and Caldwell), what constituted the alleged fraud (understatement of the amount and value of scrap), when the alleged fraud took place (between October 1995 and May 1997), and how the alleged fraud was accomplished (submission of false settlement reports to USR and concomitant scheme of concealment). These allegations discharge plaintiff's obligation under Rule 9(b) to "provide adequate notice to [defendants] and enable [them] to draft a responsive pleading." Nepomonceno v. Knights of Columbus, 1999 WL 66570, at *13 (N.D. Ill. Feb. 8, 1999). With respect to count IV, defendants' motion to dismiss is denied.

IV. Illinois Consumer Fraud Act

In count V, plaintiff alleges that defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1, *et seq*. Defendants argue that plaintiff does not have standing to bring such a claim because it is not a "consumer" seeking to enforce "consumer protection concerns," as those terms are defined in the ICFA and its case law progeny. Defendants further argue that plaintiff, as a non-resident of Illinois, cannot bring an ICFA claim and that, even if the ICFA applies, plaintiff's claim is subject to the statute's three-year limitations period. Defendants are correct in their first argument, and therefore we do not address the other points they raise.

Plaintiff asserts that it is a consumer with standing to sue under the ICFA. The ICFA defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Attempting to come within this statutory definition, plaintiff once again characterizes USR's arrangement with ERS as a

contract for services, arguing that USR purchased disposal services from ERS in return for the right to retain 30% of the scrap's resale value. This is a tortured description of a relatively straightforward business relationship. As we explained in part I above, the agreement between USR and ERS was a contract for sale of goods and not for rendition of services. ERS purchased scrap from USR, paying USR 70% of the scrap's resale value. Plaintiff cannot be considered the consumer in this relationship. *See* Peter v. Stone Park Enterprises, L.L.C., 1999 WL 543210, at *6 (N.D. Ill. July 23, 1999); Stepan Co. v. Winter Panel Corp., 948 F. Supp. 802, 806-07 (N.D. Ill. 1996).

Plaintiff may bring an action under the ICFA as a non-consumer, but only if it can "meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues." Athey Products Corp. v. Harris Bank Roselle, 89 F.3d 430, 437 (7th Cir. 1996);*see* Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc., 654 N.E.2d 1109, 1113-1116 (Ill. App. 2d Dist. 1995). Plaintiff has not alleged any nexus between defendants' conduct and consumer protection concerns in its complaint, and, notably, does not attempt to advance such an argument in its brief. The relationship between the parties was a contract between businesses with no collateral impact on consumer protection concerns. In circumstances such as these the ICFA does not apply. *See* Peter, 1999 WL 543210, at *6; Stepan, 948 F. Supp. at 807; Doherty v. Kahn, 682 N.E.2d 163, 176-77 (Ill. App. 1st Dist. 1997); Lake County, 654 N.E.2d at 1113-1116. Therefore, count V fails.

V. Conversion

In Count VI, plaintiff alleges that defendants unlawfully converted money owed to USR

under the contract by engaging in their fraudulent scheme. Illinois law limits the circumstances under which money can be the subject of a conversion claim. Generally, "conversion will not lie for money represented by a general debt or obligation." In re Thebus, 483 N.E.2d 1258, 1261 (Ill. 1985). If the money at issue is "capable of being described as a specific chattel," however, then it may serve as the basis of a conversion claim. *Id.*; see Sutherland v. O'Malley, 882 F.2d 1196, 1200 (7th Cir. 1989). In order to state a claim of conversion based on money, plaintiff must allege that it has a right to a specific, identifiable amount of money; a claim of right to an indeterminate sum of money sounds in debt rather than in conversion. *See* Sutherland, 882 F.2d at 1200; Eggert v. Weisz, 839 F.2d 1261, 1264 (7th Cir. 1988).

Plaintiff argues that it has alleged entitlement to 70% of the scrap's resale value and therefore has identified a specific amount of money as the target of its conversion claim. The mere fact that the amount alleged to be owing is stated as a percentage does not defeat plaintiff's claim. *See* Roderick Development Inv. Co., Inc. v. Community Bank of Edgewater, 668 N.E.2d 1129, 1136 (Ill. App. 1st Dist. 1996). Plaintiff's failure to allege a specific sum of money upon which its percentage stake is based, however, is problematic and ultimately serves as grounds for dismissal of this count. Courts allow claims of conversion to go forward where the allegations indicate that the sum of money at issue was segregated from other funds, received in a lump sum, earmarked, or otherwise identifiably distinct. *See* Newscope Technology, Ltd. v. Ameritech Information Industry Services, Inc., 1999 WL 199650, at *8 (N.D. Ill. Apr. 5, 1999); Cumis Ins. Soc., Inc. v. Peters, 983 F. Supp. 787, 793-94 (N.D. Ill. 1997); Marc Development, Inc. v. Wolin, 904 F. Supp. 777, 794-95 (N.D. Ill. 1995); Thebus, 483

N.E.2d at 1262. Here, plaintiff has made no such allegations. Indeed, we can infer from the complaint that ERS received payment for scrap sales from a number of different third party customers over the course of at least two years. In these circumstances, a claim of conversion based on money cannot survive. *See* Newscope, 1999 WL 199650, at *8; Cumis, 983 F. Supp. at 793-94. While plaintiff alleges that it is owed 70% of the money ERS received from reselling the scrap, it does not describe that underlying sum in a specifically identifiable manner. Therefore, count VI is dismissed, but without prejudice.[6]

VI. Restitution

Count VII alleges that defendants have been unjustly enriched by their unlawful conduct, entitling plaintiff to restitution. Defendants argue that, under Illinois law, a plaintiff cannot state a claim for restitution where a contract governs the relationship between the parties. *See* First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir. 1985) (citing LaThrop v. Bell Federal Savings & Loan Assoc., 370 N.E.2d 188, 195 (Ill. 1977), *cert. denied*, 436 U.S. 925 (1978)). Defendants are correct in that plaintiff cannot ultimately recover under an unjust enrichment theory if there is a contractual relationship between USR and ERS. Breach of contract and restitution are inherently incompatible causes of action. *See* LaThrop, 370 N.E.2d at 195. However, plaintiff is entitled to plead in the alternative in its complaint. *See* Fed.R.Civ.P. 8(e)(2). Therefore, at this preliminary stage of the litigation plaintiff may proceed under both theories. That is, plaintiff may allege the existence of a governing contract in count I and alternatively seek restitution in count VII

---

[6] If plaintiff can allege, based on the contract, that the proceeds from the scrap sale were maintained by ERS in a segregated account, or were otherwise kept distinct and identifiable from general corporate funds, the conversion claim may survive the motion to dismiss stage. *See* Cumis, 983 F. Supp. at 794.

without defaulting the latter claim on a motion to dismiss. Courts in this circuit repeatedly have held that such alternative pleading is sufficient to withstand a challenge on the pleadings. *See, e.g.*, White v. Kenneth Warren & Son, Ltd., 2000 WL 91920, at *8-9 (N.D. Ill. Jan. 14, 2000); Poindexter v. National Mortgage Co., 1995 WL 242287, at *6-7 (N.D. Ill. Apr. 24, 1995); Citicorp Leasing, Inc. v. Meridian Leasing Corp., 1992 WL 211050, at *3 (N.D. Ill. Aug. 27, 1992). While plaintiff has not expressly alleged the restitution count as being pled in the alternative, we will follow the teaching of prior decisions on this issue and construe count VII as an alternative claim.[7] *See* Poindexter, 1995 WL 242287, at *7 (collecting cases); Citicorp, 1992 WL 211050, at *3. Plaintiff may proceed with its restitution theory for now.

## VII. Accounting

In count VIII plaintiff requests an accounting of defendants' financial and corporate records in order to determine the amount of money and scrap defendants allegedly obtained and converted. Defendants argue that the complaint does not allege the elements for an accounting claim and therefore must be dismissed. In order to state a claim for accounting in Illinois, plaintiff must allege the absence of an adequate remedy at law and either a breach of a fiduciary relationship, a need for discovery, fraud, or the existence of mutual accounts which are of a complex nature. Mann v. Kemper Financial Companies, Inc., 618 N.E.2d 317, 327 (Ill. App. 1st Dist. 1992). Generally, the lack of an adequate legal remedy is the essential prerequisite to an accounting claim. There is one exception to this rule, however: Illinois courts will excuse a plaintiff's failure to allege the absence of an adequate remedy at law if the accounting claim is based on a breach of fiduciary duty. See Mann, 618 N.E.2d at 327; People

---

[7] Reading the restitution cause of action as alternatively pled is particularly appropriate in this case where we have not yet been presented with a copy of the contract.

ex rel. Hartigan v. Candy Club, 501 N.E.2d 188, 190 (Ill. App. 1st Dist. 1986).

Plaintiff's complaint does not specifically allege the absence of an adequate remedy at law. On the contrary, plaintiff has alleged breach of contract in count I and therefore is seeking a legal remedy in this lawsuit. Courts have dismissed accounting claims where breach of contract has also been alleged. *See* Midwest Neoped Associates, Ltd. v. Allmed Financial Corp., 1999 WL 674747, at *1-2 (N.D. Ill. Aug. 23, 1999); Oil Express National, Inc. v. Latos, 966 F. Supp. 650, 652 (N.D. Ill. 1997); Homestead Ins. Co. v. Chicago Transit Authority, 1997 WL 43232, at *3 (N.D. Ill. Jan. 23, 1997). Plaintiff appears to have conceded that an adequate legal remedy exists here, as it does not contest this issue in its brief.

Plaintiff's accounting claim must therefore be dismissed unless plaintiff can come within the fiduciary duty exception to the general rule. *See* Mann, 618 N.E.2d at 327. Although the complaint does not allege that either ERS or Gilbert owed a fiduciary duty to USR, plaintiff argues that the factual allegations regarding the relationship between the parties support the inference that a fiduciary relationship existed. Plaintiff emphasizes that USR relied on ERS to accurately report the amount and value of the scrap it removed from USR's facilities for resale (cplt., ¶ 10-11), thereby giving rise to a fiduciary relationship under Illinois law. *See* Pottinger v. Pottinger, 605 N.E.2d 1130, 1137 (Ill. App. 2d Dist. 1992) ("Where a fiduciary relationship does not exist as a matter of law, it may nevertheless arise where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another so the latter gains influence and superiority over the former."). We disagree. This was a contractual relationship, not a fiduciary relationship. *See* Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd., 970 F.2d 273, 280 (7th Cir. 1992)

("Parties to a contract are not each other's fiduciaries."). Moreover, both parties are sophisticated businesses which are accustomed to contractual dealings. In such circumstances, "mere allegations that one business simply trusted another to fulfill his contractual obligations is certainly not enough" to establish a fiduciary relationship. Carey Electric Contracting, Inc. v. First National Bank of Elgin, 392 N.E.2d 759, 763 (Ill. App. 2d Dist. 1979); *see* Oil Express Nat., Inc. v. Burgstone, 958 F. Supp. 366, 370-71 (N.D. Ill. 1997).

The accounting claim must fail for plaintiff has pled neither the absence of an adequate legal remedy nor the existence of a fiduciary relationship between the parties. *See* Homestead, 1997 WL 43232, at *3. This is of little negative consequence to plaintiff, however, as the information it seeks in the accounting claim will likely be revealed during the discovery phase of this case. *See* First Commodity, 766 F.2d at 1011; Staren v. Knoepfler, 1996 WL 480386, at *2 (N.D. Ill. Aug. 22, 1996). In any event, count VIII is dismissed.

VIII. Constructive Trust

In count IX, plaintiff requests that a constructive trust be imposed on profits obtained by defendants from the resale of USR's scrap. Defendants correctly argue that constructive trust is a remedy, and not a claim, and therefore cannot stand as a separate cause of action. *See* Fujisawa Pharmaceutical Co., Ltd. v. Kapoor, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998); *see also* Egert v. FT Mortgage Companies, 1999 WL 528517, at *3 (N.D. Ill. Jul. 19, 1999). As a remedy, however, a constructive trust may be appropriate "where there is a breach of fiduciary duty or when fraud is proven." Senese v. Climatemp, Inc., 582 N.E.2d 1180, 1188 (Ill. App. 1st Dist. 1991), *appeal denied*, 591 N.E.2d 31 (Ill. 1992). Therefore, if plaintiff prevails on claims for which constructive trust is an appropriate remedy, it is free to argue that

such a remedy should be imposed. *See* <u>Fujisawa</u>, 16 F. Supp. 2d at 952. Insofar as plaintiff alleges constructive trust as a separate cause of action in count IX, that count is dismissed. As a potential remedy, however, constructive trust survives.

IX. <u>Punitive Damages</u>

Plaintiff has alleged entitlement to punitive damages in a number of its causes of action. Pursuant to Rule 12(f), defendants seek to strike the requests for punitive relief made in counts I, VII, and IX (breach of contract, restitution, and constructive trust). We have dismissed plaintiff's constructive trust claim to the extent that it is alleged as a separate cause of action, so defendants' argument is moot as to count IX. We have upheld plaintiff's restitution claim as an alternative to its breach of contract claim. If plaintiff ultimately proceeds down the path of restitution, however, it cannot recover punitive damages. <u>See Record Data, Inc. v. Schoolcraft</u>, 1986 WL 4424, at *4 (N.D. Ill. Apr. 8, 1986); *see also* <u>C.B. Mills v. Hawranik</u>, 1994 WL 113088, at *20 (N.D. Ill. Mar. 30, 1994). Therefore, plaintiff's prayer for punitive relief in count VII is stricken.

Turning to count I, we observe that a plaintiff generally cannot recover punitive damages on a breach of contract claim. *See* <u>Cirrincione v. Johnson</u>, 703 N.E.2d 67, 70 (Ill. 1998). Illinois courts have developed a limited exception to this rule, however, and allow punitive damages to be awarded in contract cases where the defendant is also found to have committed an independent tort, separate from the breach of contract. *See* <u>Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.</u>, 962 F.2d 628, 638 (7th Cir. 1992); <u>Morrow v. L.A. Goldschmidt Associates, Inc.</u>, 492 N.E.2d 181, 184 (Ill. 1986). Plaintiff correctly invokes this exception here. As the Illinois Supreme Court held in <u>Morrow</u>, a

plaintiff may recover punitive damages for breach of contract "where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression." Morrow, 492 N.E.2d at 184 (quotation and citation omitted). The factual allegations underlying plaintiff's breach of contract claim also form the basis of its common law fraud cause of action (which we have upheld in this order). Therefore, plaintiff properly has alleged that "the conduct causing the breach" of contract may also be "a tort for which punitive damages are recoverable." Id. Furthermore, count I alleges "willful, intentional and malicious" behavior on the part of defendants (cplt., ¶ 30). These allegations are sufficient to state a claim for punitive damages based on a breach of contract. See Sharpe v. Jefferson Distributing Co., Inc., 1998 WL 786397, at *3 (N.D. Ill. Nov. 6, 1998). Defendants' motion to strike the punitive damages element of count I is denied.

## X. Prejudgment Interest

Finally, defendants move to strike the request for prejudgment interest made by plaintiff in each of its claims. Illinois law permits recovery for prejudgment interest if the amount due is fixed or easily computed. 815 ILCS 205/2; see Oak Park Trust & Savings Bank v. Intercounty Title Co. of Illinois, 678 N.E.2d 723, 727-28 (Ill. App. 1st Dist. 1997). Defendants argue that the amount of actual damages claimed by plaintiff is not a liquidated or fixed amount and therefore prejudgment interest cannot be awarded. It is true that plaintiff's complaint does not allege a precise amount of damages. Rather, plaintiff alleges that it is owed 70% of the resale value of the scrap pursuant to the terms of the agreement, and that the amount of damages are in excess of the jurisdictional minimum. But this does not defeat plaintiff's claim. A minimal amount of discovery into defendants' records should reveal the

actual weight of the scrap ERS removed from USR's facilities during the course of their relationship and the amount of money ERS received upon resale of that scrap. From there it will take only a simple exercise of mathematics to determine exactly what USR was owed (*i.e.*, 70% of the scrap's resale value). Under Illinois law, prejudgment interest "can be awarded on money payable even when the claimed right and the amount due require legal ascertainment, notwithstanding the fact that the parties could reasonably differ as to their liability." Bank of Chicago v. Park Nat. Bank, 640 N.E.2d 1288, 1296 (Ill. App. 1st Dist. 1994); *see* Fabe v. Facer Ins. Agency, Inc., 773 F.2d 142, 146-47 (7th Cir. 1985) (upholding prejudgment interest in contract case "even though a good faith defense exists, and ... the claimed right and the amount due require judicial ascertainment."), *cert. denied*, 475 U.S. 1013 (1986); *see also* Art Press, Ltd. v. Western Printing Machinery Co., 852 F.2d 276, 278-80 (7th Cir. 1988). Since the parties should easily be able to compute the amount due after minimal investigation, plaintiff's prayer for prejudgment interest survives.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted as to counts II, V, VI, VIII and IX, and denied as to counts I, IV and VII. We also grant defendants' motion to strike the punitive damages element of count VII. Defendants' motion is denied in all other respects.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 9, 2000.